1  Stephen C. Chuck, Esq. SBN 119612
2  schuck@foleymansfield.com
   Tiffany M. Birkett, Esq. SBN 222390
3  tbirkett@foleymansfield.com
4  **Foley & Mansfield PLLP**
   300 S. Grand Ave., Suite 2800
5  Los Angeles, California 90071
6  Telephone: (213) 283-2100
   Facsimile: (213) 283-2101
7

8  Attorneys for Defendants
9  **Deutsche Bank National Trust Company, as Trustee of The IndyMac INDX**
   **Mortgage Trust 2007-AR17, Mortgage Pass-Through Certificates, Series**
10 **2007-AR17 under The Pooling and Servicing Agreement dated June 1, 2007**
11 **and IndyMac Mortgage Services, a division of OneWest Bank, FSB**

12

13              **UNITED STATES DISTRICT COURT**
14
15           **CENTRAL DISTRICT OF CALIFORNIA**

16  SARA BABADJANIAN, an individual;    ) Case No. **CV10  2580** DMG (RZx)
17  BOGHOS BABADJANIAN, an individual   )
                                        )
18              Plaintiffs,             ) **DEFENDANT INDYMAC**
19  v.                                  ) **MORTGAGE SERVICES AND**
                                        ) **DEUTSCHE BANK NATIONAL**
20  DEUTSCHE BANK NATIONAL TRUST        ) **TRUST CO.'S NOTICE OF**
21  COMPANY, as Trustee of the IndyMac  ) **REMOVAL OF ACTION**
    INDX Mortgage Trust 2007-AR17, a    ) **PURSUANT TO 28 U.S.C.**
22  corporation; QUALITY LOAN SERVICE   ) **SECTION 1441(b)**
23  CORPORATION, a corporation; INDYMAC )
24  MORTGAGE SERVICES a division of     )
    OneWest Bank, FSB; a corporation and)
25  DOES 1 through 50, inclusive        )
26                                      )
27              Defendants,             ) Complaint filed:  March 5, 2010
    _____ )
28
                                    1
   **DEFENDANT INDYMAC MORTGAGE SERVICES AND DEUTSCHE BANK**
   **NATIONAL TRUST CO.'S NOTICE OF REMOVAL OF ACTION PURSUANT**
   **TO 28 USC SECTION 1441(b)**

**TO THE CLERK OF THE ABOVE-REFERENCED COURT:**

   **PLEASE TAKE NOTICE** that Defendants IndyMac Mortgage Services, a division of OneWest Bank FSB ("IMMS") and Deutsche Bank National Trust Company, as Trustee of the IndyMac INDX Mortgage Trust 2007-AR 17, Mortgage Pass-Through Certificates, Series 2007-AR17 under the Pooling and Servicing Agreement dated June 1, 2007 erroneously sued as  Deutsche Bank National Trust Company, as Trustee of the IndyMac INDX Mortgage Trust 2007-AR 17 ("Deutsche Trust Company") (hereinafter collectively as "Defendants") hereby remove to this Court the state court action described below, pursuant to 28 U.S.C. section 1441(b).

   1.     On March 5, 2010, an action was commenced in the Superior Court of the State of California for the County of Los Angeles, entitled SARA BABADJANIAN, an Individual; BOGHOS BABADJANIAN, an individual v. DEUTSCHE BANK NATIONAL TRUST COMPANY, as Trustee of the IndyMac INDX Mortgage Trust 2007-AR17, a corporation; QUALITY LOAN SERVICE CORPORATION, a corporation; INDYMAC MORTGAGE SERVICES a division of OneWest Bank, FSB; a corporation and DOES 1 through 50, inclusive, as Case No. EC 052417.  A true and correct copy of the Complaint is attached hereto as Exhibit "A."

   2.     Defendant IMMS was served with the Complaint on or about March 12, 2010.  This was the first date upon which IMMS received a copy of the Complaint or any other pleading or document relative to this action.  See Exhibit "A" attached hereto.

   3.     This action is a civil action of which this Court has original jurisdiction under 28 U.S.C. §1331, and is one which may be removed to this Court by Defendant herein pursuant to the provisions of 28 U.S.C. §1441(b) in that the Complaint alleges a cause of action under the Fair Debt Collection Act 15 USC § 1692 et seq.

   4.     This Notice of Removal is timely in that it is filed within 30 days of service of the Complaint by which Defendants first received notice of the facts

2

**DEFENDANT INDYMAC MORTGAGE SERVICES AND DEUTSCHE BANK
NATIONAL TRUST CO.'S NOTICE OF REMOVAL OF ACTION PURSUANT
TO 28 USC SECTION 1441(b)**

indicating that the case was removable within the meaning of 28 U.S.C. §1441(b).

5.     On information and belief, no other named defendants have been served in this action, and therefore, Defendants have not yet obtained their consent to remove the matter to Federal Court.   See, *Gossmeyer v. McDonald* 128 F3d 481, 489 (7th Cir. 1997).

6.     As required by 28 U.S.C. §1441(b) and the local rules of this Court, true and correct copies of all pleadings served upon OneWest are being filed with this Notice of Removal, attached hereto as Exhibits "A".

7.     Removal of this action is proper under 28 U.S.C. §1441(b), because it is a civil action brought in a state court, and the federal district courts have original jurisdiction over the subject matter pursuant to 28 U.S.C. §1441(b) because the causes of action are plead under federal statutes.

8.     THEREFORE, pursuant to these statutes and in conformance with the requirements set forth in 28 U.S.C. §1441, Defendants hereby remove this action for trial from the Superior Court of the State of California for the County of Los Angeles to the Central District.


DATED:   April 8, 2010                          FOLEY & MANSFIELD, P.L.L.P.


                                    BY: _____
                                        Stephen C. Chuck
                                        Tiffany M. Birkett
                                        Attorneys for Defendants
                                        **Deutsche Bank National Trust
                                        Company, as Trustee of The IndyMac
                                        INDX Mortgage Trust 2007-AR17,
                                        Mortgage Pass-Through Certificates,
                                        Series 2007-AR17 under The Pooling
                                        and Servicing Agreement dated June 1,
                                        2007 and IndyMac Mortgage Services,
                                        a division of OneWest Bank, FSB**

3

**DEFENDANT INDYMAC MORTGAGE SERVICES AND DEUTSCHE BANK
NATIONAL TRUST CO.'S NOTICE OF REMOVAL OF ACTION PURSUANT TO 28
USC SECTION 1441(b)**

# Exhibit A

LAW OFFICES OF M. AZHAR ASADI
M. Azhar Asadi, Esq. SBN: 257004
9935 South Santa Monica Boulevard
Beverly Hills, CA 90212
Tel: 310-623-1676
Fax: 310-271-6893

ORIGINAL FILED

MAR -5 2010

LOS ANGELES
SUPERIOR COURT

~~~ ~~ Central Glendale, 600
~~ ~~~~~ Glendale, CA., for all further
~~~ceedings.

Attorney for Plaintiff

Sara Babadjanian and Boghos Babadjanian

SUPERIOR COURT OF THE STATE OF CALIFORNIA
COUNTY OF LOS ANGELES

| | |
|---|---|
| SARA BABADJANIAN, an individual;) <br> BOGHOS BABADJANIAN, an individual ) <br> Plaintiffs, ) <br> v. ) <br> Deutsche Bank National Trust Company ,as) <br> Trustee of the IndyMac INDX Mortgage Trust) <br> 2007-AR17, a corporation; QUALITY LOAN) <br> SERVICE CORPORATION, a corporation;) <br> IndyMac Mortgage Services a division of One) <br> West Bank ,FSB: a corporation  and DOES 1) <br> through 50, inclusive, ) <br> Defendants. ) | Case No.:   **EC 052417** <br><br> COMPLAINT FOR: <br> 1. NEGLIGENCE <br> 2. VIOLATION OF FDCPA <br> 3. VIOLATION OF STATE SATUTES <br> 4. TO SET ASIDE TRUSTEE'S SALE <br> 5. FRAUD <br> 6. CANCEL TRUSTEE'S DEED <br> 7. QUIET TITLE <br> 8. CONSTRUCTIVE FRAUD <br> 9. BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING <br> 10. BREACH OF CONTRACT <br> 11. UNJUST ENRICHMENT <br> 12. VIOLATION OF BUSINESS&PROFESSIONALS CODE <br> 13. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS <br> 14. LACK OF STANDING <br> 15. PREDATORY LENDING <br> 16. INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS <br> 17. ACCOUNTING |

### STATEMENT OF THE FACTS

Sara and Boghos Babdjanian (hereinafter Boghos and Sara) an Armenian immigrant couple

came with a dream to build a life for themselves and raise a family in the United States. Boghos

and Sara built this four unit building with their sweat and hard work with the intent to use it as

their retirement home and live there permanently.

1

In financial turmoil of 2008, Their bank IndyMac and its successor One West Bank ,while working with them in a work out plan went under Federal government control ,while they were in reliance on the on going negotiation with them .

A forbearance plan was put in place to avoid foreclose sale executed by one joint tenant, with a monthly payment plan of $8670.00 (Eight thousand and Seventy Dollars) with the alleged agreement of one of the two borrowers :Sara Babadjanian. Signing of the forbearance plan was a significant transfer of interest in the property and thus became automatically void and had no effect, therefore the following foreclosure sale which is based on allegation of Borrowers breaking their forbearance agreement is without any merits.

Borrower is defined in the deed of trust dated May 2007 as B & J as Husband Wife as Joint Tenants, and the modification forbearance agreement alleged executed as a joint tenant Sara severed the Joint tenancy the minute she singed the forbearance agreement and thus created a tenancy in common which she did have a power to sign on behalf of the other tenant and thus the lender and trustee.

This Armenian immigrant family were offered a more affordable plan in July 2009.While they were going to switch to the new plan their Bank left them in the dry and sold the property .

Sara entered into the an agreement to pay 8670.00 a month unit end of August 2009.However the joint tenant Boghos did not accept or assent to this agreement. The agreement is legally non binding on Boghos .The lender accepted payments from Sara.

Lender waived its default agreed to forebear from sales with Sara .While Boghos enaged a third party broker to  modify the loan ,and  IndyMacand its successor One West Bank agreed to do it, suddenly and without any warning  IndyMacand its successor One West Bank  accelerated and

2

1  went to foreclosure sale on August 25,2009.These conducts violates the statute 2924g ,CFPA

2  ,and recent development added under senate bill 1137.

3  To add more confusion in this situation ,Indymac had gone under government take over and the

4  communication with the bank became more problematic  but it was run by One West Bank .

5  Last communication regarding the sale occurred on March. 19 ,2009 accordingly a notice of sale

6  was recorded  indicating that a sale will occur on 4/7/2009 at 10:30 am at Los Angeles court

7  house.

8  No sale occurred on 4/7/2009 ,and a Trutors were under impression that an agreement has been

9  obtained, and the sale was not conducted.

10  Here ,One West Bank acted as an agent and successor for IndyMac, without having any standing

11  as to the actual ownership of the note .

12  Onewest  Bank as an agent  and  successor of IndyMac accepted payment in excess of regular

13  payments  which  constitutes  a waiver of  the default  and  by a letter extending the payment

14  deadline and the actual Postponement of the sale from April 7/2009 .

15  Indymac Misled and lulled borrowers by conduct of accepting payment in the past. Here,

16  borrowers were defrauded by lender's requirement for pre workout agreement, including keeping

17  loan payments current after increase, as condition for negotiating modification, when lender

18  never intended to modify loan.

19  We think from these facts court might infer a waiver of the conditions regarding forfeiture of

20  time and that the Plaintiff has alleged facts to support a general allegation of the complaint that

21  Defendants had waived those conditions

22  Indymac have waived the default by accepting less than perfect performance in the past.

23  Lender should had refrained from declaring the same default and sale again until after giving

24

25

3

COMPLAINT TO SET ASIDE TRUSTEE'S SALE

borrower a proper  notice that is intending to proceed .Strict compliance was required  and a

reasonable opportunity to comply after receipt of lender's notice should have been afforded.

Lender failed to obtain the assent of the joint borrower and joint tenant Boghos on the alleged

agreement.  Technically, this notice gives the tacit (or express) acknowledgment of the waiver

and  may give rise to a claim of modification

It has been settled law that the acceptance by a vendor of payments which are past due under

an executory contract constitutes a waiver of the right to forfeit the purchaser's interest by

reasons of breaches which have accrued at or prior to the time when such payment was made;

accordingly he may not be again placed in default for the same delinquency until he has been

allowed a reasonable time to perform his contract. In such case, it is said, "the right of forfeiture

is temporarily suspended until the vendor has given notice of his intention to require strict

performance in the future and the borrower  has a reasonable time within which to perform his

part of the contract." (Harmon Enterprises, Inc. v. Vroman, 167 Cal.App.2d 517. Otherwise

stated, "Since the law looks unfavorably upon forfeitures, waiver of the time clause  will be

deemed to be a waiver of the forfeiture unless the time element is first reestablished by definite

notice." (Gonzalez v. Hirose, 33 Cal.2d 213, 216 . The above principle has been held applicable

to obligations secured by deeds of trust. (Bledsoe v. Pacific Ready Cut Homes, Inc., 92 Cal.App.

641, 645 [268 P. 697]; see also Altman v. McCollum, 107 Cal.App.2d Supp. 847, 858 [236 P.2d

914].) But    the giving of written notice (after acceptance of such payment) that strict

performance of the contract's covenants will be necessary in the future. To be reasonably

definite, the notice should recite in substance that "unless payment was made on 'a date fixed

therefore, far enough in the future to give the purchaser reasonable time and opportunity to

comply with his contract by making the payments, the contract will be terminated and forfeiture

will take place.'  (Lamont v. Ball, 93 Cal.App.2d 291, 293 [209 P.2d 9].)In all these incidents the joint tenant Boghos's signature and assent to the agreement is entirely missing.

Although there are cases holding that the mere acceptance of one payment  constitute a waiver of the right to declare a forfeiture  here , we have much more than this in the present case  Three payments in succession, it is alleged, were accepted after maturity and without objection or protest of any kind. Other facts are alleged which have a strong appeal to a court of equity, like absence of other joint tenant's signature and assent of Sara because of language barriers. "We think from these facts court might infer a waiver of the conditions regarding forfeiture of  time and that  the  Plaintiff has  alleged facts to support a general allegation of the complaint that Defendants  had waived those conditions." (Boone v. Templeman, supra, at pp. 296-297.) It was error, therefore, to sustain the demurrer to the complaint as last amended.

Thus without offering any modification or any reasonable time to reinstatements or cure Indymac unfairly and surprisingly without any communication about its intentions allegedly 'sold" the property for 618000 to its own trustee Deutsche Bank on August 25 ,2009.

Finally there is a lack of standing to foreclose by One west ad the agent and successor of Indymac ,because the true identity of the owner of the note was unknown ,and the foreclosing party was not the true owner  of the note.

Plaintiffs Sara Babadjanian ,Boghos Babadjanian alleges as follows:

### GENERAL ALLEGATIONS

1.    Plaintiff is, and at all relevant times was, individual, with his principle residence in the County of Los Angeles, California.

2.    Defendants Deutsche Bank National Trust Company, and at all times mentioned in this complaint was engaged in banking and trust business as a California Corporation.

5

COMPLAINT TO SET ASIDE TRUSTEE'S SALE

3.      Defendant IndyMac Mortgage Services is division of One west Bank is a financial corporation, organized and existing under the laws of United States of America and is now, and at all times relevant to this complaint was, the beneficiary under the deed of trust or acquired the interest as a result of merger acquisitions.

4.      Defendant QUALITY LOAN SERVICE CORPORATION is a foreclosure trustee service corporation, organized under the laws of California was at all times relevant to this complaint a Trustee according to the Trustee Deed upon sale.

5.      Plaintiff does not know the true names, capacities, or basis for liability of defendants sued as Doe 1 through Doe 50. Each fictitiously named defendant is in some manner liable to Plaintiff, or claims some right, title, or interest in the subject property, or both.

6.      On or about December 3 ,2001  Plaintiff purchased the real property commonly known as 11621 Burbank Blvd Los Angeles , California  Los Angeles Ca 91423(hereinafter the "subject property" or "property").

7.      On Jan 26, 2005 Plaintiff refinanced his building and executed a new deed of Trust to Century Mortgage.

8.      Again on May 10 ,2007 Plaintiff executed a deed of Trust for an interest only loan against the said property and declared Indymac as the beneficiary for $750, 000.

9.      On May 10 2007, in connection with refinancing of the subject property, Plaintiff executed and delivered a promissory note, promising to pay a total of $750,000.00 to Indy mac and its successor One West Bank Mortgage Services a division of One west Bank,FSB N.A. ("Indy mac").The Note was secured by a Deed of Trust on the Subject Property (hereinafter "Deed of Trust"), with said deed of trust executed by Plaintiff on May 10 2007. The Deed of Trust was recorded on May 17, 2007, in the Official Records of Los Angeles

6

COMPLAINT TO SET ASIDE TRUSTEE'S SALE

County as Document No. 20071203603. A true and correct copy of **The Deed of Trust** is attached as **Exhibit "A"** and incorporated herein by this reference.

10.     To secure payment of the principal sum and interest as provided in the note and as part of the same transaction, Plaintiff as trustor, executed and delivered to Defendant Indymac  and its successor One West Bank , as beneficiary, a deed of trust dated  May 10 2007, by the terms of which plaintiff, as trust or, conveyed the subject property to defendant Indymac, as trustee.

11.     On December 17, 2008 a Notice of Default and Election to Sell under Deed of Trust (hereinafter 'Notice of Default') was recorded in the official records of Los Angeles County. At this point, Plaintiff emphasizes that Plaintiff was not aware of any Notice of Default and did not receive any such notice.

12.     On March 19 2009 Defendant Quality Loan services recorded a Notice of Trustee Sale (hereinafter 'Notice of Trustee Sale') notifying that the subject property will be sold at public auction on April 7, 2009. Plaintiff was not aware of any Notice of Trustee Sale and did not receive any such notice.

13.     The Deed of Trust was assigned prior to the sales date to Defendant DEUTSCHE BANK NATIONAL TRUST COMPANY. Incidentally, on September 24,2009 a Trustee's Deed upon Sale is recorded in which Quality Loan  granted all of its rights and interests in the subject property to DEUTSCHE BANK this Trustee's Deed upon Sale mentions that the subject property was sold to DEUTSCHE BANK on  August 25th,2009 at a public auction.

14.     Plaintiff is doubtful as to the status of DEUTSCHE BANK to be an assignee of the deed of trust or a purchaser of the subject property.

//

7

COMPLAINT TO SET ASIDE TRUSTEE'S SALE

## FIRST CAUSE OF ACTION NEGLIGENCE
(All the Defendants)

15. Plaintiff refers to and incorporates paragraphs 1 through 14 above as though fully set forth herein.

16. On Dec 17,2008   defendant  IndyMac allegedly caused to be recorded a notice of default and an election to sell  by its trustee :Quality Loan in Public Records of the Official Records of Los Angeles  County, California, alleging that (a) a breach of the obligation secured by the deed of trust had occurred, consisting of plaintiff's alleged failure to pay an amount claimed as 22,906.68 , and (b) defendant beneficiary elected to sell, or cause to be sold, the trust property to satisfy that obligation.

17. Plaintiff alleges on information and belief that on 3/19/2009 defendant beneficiary and defendant trustee published and posted, or caused to be published and posted, at various times and in various places certain notices of their intent to sell the trust property at public auction at 4/7/2009 10:30 am purportedly to satisfy the obligation secured by the deed of trust, on grounds of the alleged breach of the obligation and under the power of sale in the deed of trust. Defendant trustee without exercise of due diligence  purported to sell the trust property  not as noticed, accepted  no consideration from defendant DEUTSCHE BANK NATIONAL TRUST COMPANY, and then executed and delivered or caused to be executed and delivered a trustee's deed to defendant DEUTSCHE BANK  as Trustee of IndyMac and its successor One West Bank INDX mortgage  Trust

18. Defendant  IndyMac and its successor One West Bank   failed to obtain the  signature of one party , Sara who is not illiterate in English ,and perhaps  did not understand the nature  and the consequences of signing  therefore breach its duty of care ,.  A cursory look at the note and deed   of trust would have shown that there are two .Defendant Quality Loan failed to

exercise due diligence by not verifying the underlying facts about the non occurrence of the sale on 4/7/2009 and unclear and indefinite postponement of the sale .Defendant Quality Loan failed the exercise of due diligence on days prior to 8/25/2009 to notify, verify, and comply with the statute 2924g before conveying title to Duetsche Bank.

19. The sale was improperly held and the trustee's deed was wrongfully executed, delivered, and recorded in that plaintiff's contends there was, no breach of the obligation amounting to invalid presale procedures, improper sale procedures  in violation of the terms and conditions of the promissory note and deed of trust and in violation of the duties and obligations of defendant beneficiary and defendant trustee to plaintiff, all to plaintiff's loss and damage in that plaintiff has been wrongfully deprived of the beneficial use and enjoyment of the real property and has been deprived of legal title by forfeiture.

20. On August 25,2009, 2008, Quality Loan services  granted and conveyed the property to Defendant, DEUTSCHE BANK as an assignee of   IndyMac and its successor One West Bank Mortgage Services a division of One west Bank ,FSB without Plaintiff's knowledge ,where it was the foreclosing party.

21. The trustee sale executed by Defendant was a breach of duties owed and did not comply with all requirements of law. Defendant never mailed or personally delivered notice of default in violation of Civil Code § 2924 after entering into the agreement not to sell.

22. Defendant engaged in improper trustee sale procedure which lacks proper notice as provided by Civil Code §2924, and failed to comply with the provision of proper conduct of trustee and substitute trustee.

23. Foreclosure sale was not conducted duly and the Deed upon sale lacks requirements of perfection according to Civil Code § 2924 due to failure to notify Plaintiff.

9

COMPLAINT TO SET ASIDE TRUSTEE'S SALE

24. Gross disparity between sale price ($709,200.00) and property value approx 1 Million is unfair.

25. Defendant is estopped from asserting the Title since Title is obtained by unfair and improper conduct.

26. No postponement was afforded.

27. Inadequate price coupled with denial of request for postponement of sale constituted adequate grounds for voiding sale. Plaintiff had the right to avoid the sales and he elected to do so by seeking that relief in this action.

28. As a proximate result of negligent or reckless conduct of Duetche Bank as a foreclosing party and Quality loan Plaintiffs have lost their property.

## SECOND CAUSE OF ACTION
### FOR VIOLATION OF FDCPA
(Against All defendants)

29. Plaintiff refers to each and every paragraph 1 through 28 and incorporates those paragraphs as though set forth in full in this cause of action.

30. Pursuant to FDCPA  15 USC Se 1692f, Defendants used unfair and unconscionable means to collect the debt ,by attempting to charge fees, expenses ,balloon payments ,interest etc as agreed but was not included in the ongoing modification .In case of Saran Defendant did not honor its promise not to conduct the oppressive sale .

31. One West Bank was a debt collector within the meaning of the Fair Debt collection Act (FDCPA), 15 USC 1692 a.

   -Each of the amount 8670 and the Balloon payment at the end of the term were incorrect.

   -Defendants failed to provide the verification of the debt to the Plaintiffs.

COMPLAINT TO SET ASIDE TRUSTEE'S SALE

-Due to repeated and continuous violation of the FCP the Plaintiffs are entitled to actual damages and statutory damages.

32. Plaintiff is the title holder and joint tenant for the aforementioned property.

33. As a proximate result of   secure Plaintiff's interest in the property, which is by law considered unique, and the loss of which would result in irreparable harm to Plaintiff.

## THIRD CAUSE OF ACTION VIOLATION OF STATUTE  CFPA AND 2924g and California Foreclosure Prevention Act (CFPA)
### (Against all Defendants)

34. Plaintiff refers to paragraph 1 through 33, inclusive, and incorporates those paragraphs as though set forth in full in this cause of action.

35. The California Foreclosure Prevention Act (CFPA) (CC §§2924, 2923.52-2923.55) imposes an additional 90-day waiting period following the usual 3-month mandatory waiting period that follows the recordation of a notice of default and before a notice of sale issues.

36. The CFPA was enacted in February 2009 as an emergency measure.   "skyrocketing" residential foreclosure rates; a "destabilized" housing market; a "glut" of foreclosed properties already on the market; and the deleterious effects of these circumstances on the economic health of the state  The legislation sunsets on January 1, 2011

37. The CFPA added § 2923.52 to the Civil Code. Under CC §2923.52(a)(1)-(4), the additional 90-day period applies only to loans meeting this criteria:

That operative date arrived on or around June 15, 2009. The regulations required by §2923.52(d) were adopted by the California Corporations Commissioner on June 1, 2009, in Subchapter 14 added to Chapter 3 Boghos intended to reside in 11621 and was actually designated to live in the property at his retirement and keep one unit Defendants violated the CFPA when at the point of July 2009 did not add 90 days to the foreclosure

11

sales date that would be 10 2009 . Postponement of a trustee sale is governed by CC §2924g(c)(1). At any time before the foreclosure sale is completed, the trustee may postpone the sale at the trustee's discretion or on instructions from the beneficiary.

38. A postponement agreement between the trustor and the beneficiary that is supported by consideration in the form of a forbearance fee is enforceable, but the amount charged for the delay may constitute a "loan or forbearance" of money and therefore be subject to usury restrictions. See _Buck v Dahlgren_ (1972) 23 CA3d 779, 100 CR 462

39. Here, the Trustee agreed not to conduct the sale on the scheduled date of 4/7/2009 and Boghos did notice that there was not any sale conducted in that date .Plaintiff relied on the conduct of the Trustee and Indy mac and its successor One West Bank that they are in agreement to modify the loan and meanwhile they would not conduct any sale .Moreover in light of heft payments of 8667.40 checks each month they will definitely give a reasonable notice to Babdjanians before selling . However ,on 8/25/2009 without any prior warning despite of the waiver of the right to sale  ,and reliance by Plaintiff on this waiver Defendants rushed to the alleged sale and sold their property.

### FOURTH CAUSE OF ACTION SETTING ASIDE THE TRUSTEE SALE
(Against Defendant DEUTSCHE BANK NATIONAL TRUST COMPANY and Quality LOAN Services )

40. Plaintiff refers to each and every paragraph 1 through 39 and incorporates those paragraphs as though set forth in full in this cause of action.

41. Under equitable power of the court Plaintiff seeks to set aside the sale on the ground that strict compliance with the statute was violated as a result the sale is void. Defendant never mailed, personally delivered notice of default in violation of Civil Code § 2924, or did his best effort to notify the Plaintiff.

12

42. Defendant engaged in improper trustee sale procedure which lacks proper notice as provided by Civil Code § 2924, and failed to comply with the provision of proper conduct of trustee and substitute trustee.

43. Defendant DEUTSCHE BANK NATIONAL TRUST COMPAN claims to be the owner ,by virtue of a trustee's deed upon on sale conveyed to by Quality Loan Services.

44. Foreclosure sale was not conducted duly, properly and incompliance with 2924g and the Deed upon sale lacks requirements of perfection and truthfulness according to Civil Code § 2924.

45. Gross disparity between sale price of $618,750.00 and property value of $ over 1million is unfair and irregular in the sale process.

46. The inadequate price coupled with denial of request for postponement of sale constituted adequate grounds for voiding sale. Plaintiff had the right to avoid the sales and he elected to do so by seeking that relief in this action.

47. The sale was improperly held and the trustee's deed was wrongfully executed, delivered, and recorded in that  there was  no breach of the obligation, absence of  signature of the joint tenant , invalid presale procedures which did not comply with recently passed statutes, improper sale procedures in violation of the terms and conditions of the promissory note and deed of trust and in violation of the duties and obligations of defendant beneficiary and defendant trustee to plaintiff, all to plaintiff's loss and damage in that plaintiff has been wrongfully deprived of the beneficial use and enjoyment of the real property and has been deprived of legal title by forfeiture.

48. Plaintiff  has tendered in one instance and offered to tender in another and still is willing to tender  to defendant beneficiary or defendant trustee all amounts due and owing so that the

13

claimed default may be cured and plaintiff may be reinstated to all former rights and privileges under the promissory note and deed of trust. Plaintiff is ready, willing, and able to tender those sums, if any, that the Court finds due and owing on rendering the accounting requested in this Complaint .

## FIFTH CAUSE OF ACTION
### FOR FRAUD
(Against All the Defendants)

49. Plaintiff refers to each and every paragraph 1 through 48 and incorporates those paragraphs as though set forth in full in this cause of action.

50. Defendant IndyMac and its successor One West Bank  and its assignee of all its rights DEUTSCHE BANK NATIONAL TRUST COMPANY  through their agents whose  names are not known at this time  had  deliberately induced one of the borrower into an agreement without notifying the other borrower Boghos. Defendants induced the other borrower into a modification agreement without intent to actually honor it, with clear knowledge that as a result of this lack of notice the Plaintiff may loose his home. Defendants conspired to bypass the notice requirements and later without proper bidding and intentionally failing to provide the proper notices took the title of the property away from the Plaintiff.

51. As part of their scheme to defraud Boghos Babadjanian  Defendant made representation as to a forbearance  agreement   ,and modification attempt with the intent  that Plaintiff would rely on their misrepresentation Specifically Defendants changed the terms of the default by an agreement that only one of the borrowers had  allegedly agreed to without letting the other one know Boghos, Defendant  surreptitiously prepared the agreement and accepted payment and then suddenly sold the property even though they had Promised that they have opened a modification and will not sell the property while the modification is on going.

14

52. Defendants prevented the Plaintiff from attending the public auction to bid or later to redeem his property. The material false representation was made when the Defendants intentionally omitted the Plaintiff from the receipt of the notices even though his address was known to them. True identity of the agents of the Defendants are only known at this time .

53. Plaintiff reasonably relied on the proper conduct of the Trustee that there will not be any sale of his property until further notice and a proper notification of the borrower

54. The actions stated above was false, misleading, and fraudulent and were designed with wanton disregard for the truth in order to induce the transfer title to the Lender without receiving the appropriate value .As direct result of their action Boghos has lost their property.

55. Foreclosure sale was conducted improperly and covertly.

56. Gross disparity between sale price ($709,200.00) and property value ($ 1Million ) shows a clear intent to deprive the Plaintiff from his rights and was unfair and irregular.

57. Plaintiff had the right to purchase the property in a public auction. Defendant was aware that it was foreseeable for a home owner to prevent the loss by attending the sale.

58. Plaintiff reasonably relied on the misrepresentation of the Defendant and was not able to repurchase the property through his own or third party entity.

59. Plaintiff now is lost his credit rating and suffered monetary damages and cost of recovery of his property.

## Sixth CAUSE OF ACTION FOR CANCELLING TRUSTEE'S DEED
(Against Defendant DEUTSCHE BANK NATIONAL TRUST COMPANY)

60. Plaintiff refers to paragraph 1 through 59, inclusive, and incorporates those paragraphs as though set forth in full in this cause of action.

15

61. Defendant, DEUTSCHE BANK claims an estate or interest in the subject property adverse to that of Plaintiff, but Defendant's claims are without any right; Defendant has no estate, right, title, or interest in the real property.

62. The claims of Defendant are based on the Trustee's Deed purporting to have been executed by Defendant, and delivered to Defendant on 8/25/2009 , and purporting to convey the property to Defendant.

63. Although the trustee's deed appears valid on its face, it is invalid, or voidable  and of no force or effect regarding plaintiff's interests in the real property described in paragraph 1, for the reasons set forth in above paragraphs.

64. The interest in the described real property claimed by Defendant, based on the Trustee's Deed, is a cloud on Plaintiff's title in and to the real property, tends to depreciate its market value, restricts Plaintiff's full use and enjoyment of the real property, and hinders Plaintiff's right to unrestricted alienation of it. If the Trustee's Deed is not canceled, there is a reasonable fear that Plaintiff will suffer serious injury.

65. By this complaint, plaintiff notifies defendant of plaintiff's intent to cancel the the Deed of Trust upon sale and offers to restore everything of value plaintiff received from defendant, consisting of  alleged default payments  minus all damages suffered by plaintiff, which consisted of the amount that which will be determined at the time of trial.

66. Plaintiff did not learn of the grounds for cancellation alleged in Paragraph 5 until 12/20/08 on which date learned that sales procedure  was not conducted properly.

67. Plaintiff did not learn of the grounds for cancellation alleged in Paragraph 5 until 12/8/2008 , on which date plaintiff was informed by his counsel that the conduct of trustee and defendants amounts to improper procedure as required by 2924 et al.

16

COMPLAINT TO SET ASIDE TRUSTEE'S SALE

68. There is a reasonable apprehension that the Deed of Trust upon Sale may cause serious injury to plaintiff in that Defendant DEUTSCHE BANK NATIONAL TRUST COMPANY has attempted to evict the Plaintiff from his property again, or will try to convey to others the property described.

69. Defendant made the false representations alleged in Paragraph 5 oppressively, maliciously, and with the intent to defraud plaintiff. Plaintiff is therefore entitled to exemplary damages of $ 1.6 Million dollars.

## Seventh Cause Of Action To (Quiet Title)
### (Against DEUTSCHE BANK NATIONAL TRUST COMPANY)

70. Plaintiff refers to paragraph 1 through 69, inclusive, and incorporates those paragraphs as though set forth in full in this cause of action.

71. At all times relevant to this action Plaintiff held and now holds an interest in the Property as a Joint Tenants, trustor under the deed of trust dated May 10 2007. The basis of Plaintiff's title is a deed of trust as a security instrument which was recorded on, May 17, 2007 .Plaintiff is and all times has been in possession of the property.

72. Plaintiff does not know the true names, capacities, basis for liability, or interests in the Property of defendants sued in this action as Does 1 through 100, inclusive, and will amend this complaint when that information is discovered. At all relevant times, each defendant, including any defendant fictitiously named, claims an interest in the Property or was acting as the agent, servant, employee, partner, or joint venture of each other defendant in doing the things alleged and is responsible in some manner for the damages and disputes alleged in this complaint.

73. Plaintiff seeks to quiet title against the claims of Defendant that a Trustee Sale has been duly conducted by the Trustee, and a Trustee's Deed conveying title to Defendant has been duly

COMPLAINT TO SET ASIDE TRUSTEE'S SALE

recorded in the Los Angeles county where the property is situated .T Defendants' claims are without any right, and defendants have no right, title, estate, lien, or interest in the property described in paragraph sale was conducted in violation of 2924 b and 2924h and 2924g by not adhering to the notice to Plaintiff and conducting a with depriving the Plaintiff from presence in the alleged auction. Indy mac and its successor One West Bank allegedly concerted an effort   to DEUTSCHE BANK NATIONAL TRUST COMPANY, prior to trustee sale and therefore conspired to obtain the title through its agent DEUTSCHE BANK NATIONAL TRUST COMPANY and allegedly the Buyer at the auction who holds the title on the property now. In addition the deed itself does not provide any warranty of title as it was conveyed by the trustee at the sale.

74. Plaintiff names as Defendants in this action all persons unknown claiming (a) any legal or equitable right, title, estate, lien, or interest in the property described in the complaint adverse to Plaintiff's title, or (b) any cloud on Plaintiff's title to the property. The claims of each unknown defendant are without any right, and these Defendants have no right, title, estate, lien, or interest in the subject property.

75. Plaintiff seeks to quiet title against the following claims of the following named defendants DEUTSCHE BANK NATIONAL TRUST COMPANY who now hold the title by the operation of the alleged Trustee sale. Defendants' claims are without any right, and defendants have no right, title, estate, lien, or interest in the Property or any part of it.

76. The claim of The Defendant is uncertain as  the titles received by Trustee has no  warranty of title   ,and it was obtained by an assignment of right by  IndyMac and its successor One West Bank in coordinated effort.

18

COMPLAINT TO SET ASIDE TRUSTEE'S SALE

77. Plaintiff desires and is entitled to a judicial declaration quieting title in Plaintiff as of the date of 8/20/2009 or before.

## Eighth CAUSE OF ACTION FOR CONSTRUCTIVE FRAUD
### (Against All Defendants)

78. Plaintiff refers to paragraph 1 through 77, inclusive, and incorporates those paragraphs as though set forth in full in this cause of action.

79. Defendants upon information and belief allege that Defendants solicited and intentionally induced the trust, confidence and reliance of Plaintiff as her mortgage loan counselor and guide, and John Doe and IndyMac and its successor One West Bank occupied the position of Plaintiff's mortgage broker. The position of trust, confidence and reliance that IndyMac and its successor One West Bank occupied with respect to Plaintiff and the position they occupied as Plaintiff's mortgage broker created fiduciary duties owed by IndyMac and its successor One West Bank to Plaintiff which were breached by the conduct set forth above, that was done for the sake of self dealing and unjustified profits taken by Indymac which Plaintiffs relied on and sought a response for modification.

80. Defendants engaged in covert action to conceal the nature of his activities as to Trustee sale by failing to notify the Plaintiff. Indymac allegedly assigned the modification agreement of Deed of Trust to DEUTSCHE BANK and Quality loan engaged in the actual sales on 8/25/2009 with instruction received from DEUTSCHE BANK.

81. Plaintiff justifiably relied on Trustee to carry his duties according to the proper standard of a reasonable Trustee. The relationship between Trustee and Plaintiff is fiduciary in nature and imposes on Trustee a duty of the highest good faith and undivided loyalty and service toward Trustor and Lender.

19

COMPLAINT TO SET ASIDE TRUSTEE'S SALE

82. It was the duty of Trustee whom confidence is reposed and who owes fiduciary duties to Plaintiff to make full disclosure of all material facts in their knowledge relating the Trustee sale date , place and manner after postponement of 4/7/2009.

83. The concealment of notice of default and notice of Trustee sale, which Defendants knows or should have known might affect the fiduciary's responsibilities constitutes constructive fraud.

84. Defendants' concealment of time and failure to provide another Notice of Default and Notice of Trustee sale is injurious to Plaintiff. The intentional omission of notice allowed Defendants to take unconscionable advantage of Plaintiffs.

### NINTH CAUSE OF ACTION FOR BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING
### (Against All Defendants)

85. Plaintiff refers to paragraph 1 through 83, inclusive, and incorporates those paragraphs as though set forth in full in this cause of action.

86. Plaintiff refers to each and every paragraph of the General Allegation and Incorporates by reference those paragraphs as though set forth in full in this Cause of action.

87. A trustee under a deed of trust has a duty to exercise good faith and due diligence in conducting a foreclosure sale. It is known that postponing the sale is a practice of good Faith and refusing to so a breach of the duty. The defendant's compliance either the state Statue does not relive them from the liability for breach of this duty. Refusal to honor the Agreement offered by lender in July 2009 and entered into by Plaintiff, with acceleration to foreclose is breach of implied covenant of goof faith and fair dealing. Moreover Defendants failure to engage in a meaningful loss mitigation effort, required By FHA, HUD, GSE, illustrates the intentions of the foreclosing parties not to perform their duties under the contract with good faith.

COMPLAINT TO SET ASIDE TRUSTEE'S SALE

88. Defendants instructed the Trustee to proceed with auction despite of the fact that they did not provide proper notices to Plaintiff for assignment of Deed.

89. Defendants and each of them, knowingly breached the terms and provisions of the Deed of Trust, by failing to act diligently to provide notices as required by 2924b.

90. The implied covenant of good faith imposes on Trustee a duty to refrain from the Trustee sale without notice of default and notice of Trustee sale, and requires Trustee not to take actions that deprive Plaintiff of the benefits of the agreement. But Trustee failed to do so. This implied contractual obligation is imposed on parties to an existing contract to prohibit improper unexcused conduct in the performance and enforcement of the contract.

91. The duty of good faith and fair dealing between parties to a contract is based both in common law and by statute since it involves foreclosure. This implied contractual obligation is imposed on parties to an existing contract to prohibit improper unexcused conduct in the performance and enforcement of the contract. Defendants breached their covenant of good faith by oppressively preventing Boghos from performing the rights under the contract. Defendants breached their contract with plaintiff when they failed to provide the opportunity to cure and reinstate the contact in order to cure as required by the Deed of Trust and in bad faith misused the power of sale provision of the Deed of Trust with the intent to deprive Plaintiff of their property.

92. Defendants breaches implied covenant of good faith and fair dealing by failing to provide Plaintiff with a proper the notice of default and notice of Trustee sale. Plaintiff sustained damages as proximate result of the breach and Defendants are liable for all damages proximately resulting from the conducts. Defendants breached their covenant of good faith by oppressively preventing Boghos from performing the rights under the contract to provide

21

the opportunity to cure and reinstate  the  contact in order to cure as required by the Deed of Trust and in bad faith misused the power of sale provision of the Deed of Trust with the intent to deprive Plaintiff of their property.

93. As a direct and proximate result of defendant's conduct and breach of their contractual obligations, Plaintiff has suffered damages under the conduct of the Trustee in an amount to be determined according to proof at the time of trial.

## TENTH CAUSE OF ACTION FOR BREACH OF CONTRACT
### (Against All Defendants)

94. Plaintiff refers to paragraph 1 through 93, inclusive, and incorporates those paragraphs as though set forth in full in this cause of action.

95. When contract rights are assigned, the assignee "steps into the shoes" of the assignor, taking the same, but no greater, rights than those of the assignor. The assignee's rights are subject to any claims and defenses that the obligor had against the assignor existing before the obligor receives notice of the assignment, whether acquired before or after execution of the assignment.

96. Defendants unjustified failure to perform promise or covenant in a contract  ; ignoring the borrowers right to reinstate after the PARTIAL MODIFICATION  acceleration resulted in measurable injury to Plaintiff, and gives Plaintiff the right to recover damages as compensation for the breach. Plaintiff is entitled to damages caused by breach of contract.

97. Defendants were under obligation to provide notice of change of entity under provision 20 of the contract .Instead the assignee DEUTSCHE BANK NATIONAL TRUST COMPANY as the Trustee for Indy mac acted as both foreclosing party, beneficiary and purchasing agent at the sale.

22

98. Defendants and the Foreclosing Trustee were under contractual duties to provide proper notices and give adequate time to cure, and honor borrower's right to reinstate

99. Defendants were under a duty to mail a copy of these notices to Borrower. They failed to fulfill those duties.

100.    Defendants and each of them breached these duties, by failing to notify, failing to allow time to cure and finally not honoring the borrower's right to reinstate.

101.    As a direct and proximate result of the breach of the contractual duties of the defendant the Plaintiff has suffered damages under the deed of trust and promissory note in the amount to be determined at time of trial.

102.    Indy mac and its successor in interest One West Bank breached its obligation to give proper notice as recited in the Deed of Trust prior to acceleration .In addition Indy mac and its successor One West Bank failed to notify the Plaintiff of the assignment of the Deed four days prior to Sale. They conspired   to   conduct the sale ,and DEUTSCHE BANK NATIONAL TRUST COMPANY  buying the property at 709000.00  .These acts that amounts to non-performing the provisions of the contract specifically as powers sale clause and forbearance clause ,and notice requirements  with clear intention  that the contract called for  a performance in opposite to   what the defendants did. Therefore ,defendants by not properly executing an agreement with both tenants ,and not notifying one ,using one against another breach express provisions of the contract_ meaning deed of trust. Contract specifically defined the "Borrower" as both Sara and Boghos. The deed expressly defines Trustor as Borrower meaning both Sara and Boghos.

//

//

23

## ELEVENTH CAUSE OF ACTION FOR UNJUST ENRICHMENT
### (Against DEUTSCHE BANK NATIONAL TRUST COMPANY)

103. Plaintiff refers to paragraph 1 through 101, inclusive, and incorporates those paragraphs as though set forth in full in this cause of action.

104. Defendants have acquired the benefit of the title to the said property and have retained it since September 25, 2010 loss of the title. Defendant unjustly, namely by paying an incredible amount of $709,000, has obtained title to a property that plaintiff values at 1.6 million dollars.

105. Where Defendants obtain benefits which they should not justly retain, they are unjustly enriched.

## TWLEFTH CAUSE OF ACTION FOR VIOLATION OF BUSINESS & PROFESSIONS CODE § 17200 et esq.
### (Against INDYMAC , ONE WEST BANK and Deutsche Bank National Trust Company )

106. Plaintiff refers to paragraph 1 through 104, inclusive, and incorporates those paragraphs as though set forth in full in this cause of action.

107. The conduct of the Trustee includes the following unlawful, fraudulent or unfair business acts or practices:

    a. conducting a foreclosure sale without a proper notice

    b. knowing the borrower has a right to reinstate and cure the default but refusing to give the opportunity under the contract to do so.

    c. Unreasonably engaged in a sale, while there has not been a single contact with the borrower.

    d. Concealing the method of notifying the Plaintiff, by operating out of an office that is not easily accessible by public.

COMPLAINT TO SET ASIDE TRUSTEE'S SALE

108.   Plaintiff has suffered loss of property and damage to his credit as an actual result of the Defendant's unfair competition (Business and   professions code["B&P"] 17203) as defendant engaged in bidding process that was given an opportunity to Plaintiff to compete in order to save his home from the sale.

109.   Plaintiff has evidence of similar wrong doing around the same time by the Defendant.

### THIRTEENTH CAUSE OF ACTION FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (AGAINST ALL THE DEFENDANTS)

110.   Plaintiff refers to paragraph 1 through 108, inclusive, and incorporates those paragraphs as though set forth in full in this cause of action.

111.   The conduct of the Defendants as to setting up a forbearance  agreement with one joint tenant and offering them a modification  in the middle of the agreement with only one party to the Deed of trust in order to take the property from them without notice is an extreme and outrageous act. This conduct was reckless as to the lack of any regards for husband and wife's emotional well being and staring a confect between them. As a result of Defendant's conduct Boghos were injured by both losing their property and Boghos suffers nervous attacks, sleeplessness and other heart problems.

### FOURTEENTH CAUSE OF ACTION FOR LACK OF STANDING
### (Against Deutsche Bank National Trust Company)

112.   Plaintiff refers to paragraph 1 through 110, inclusive, and incorporates those paragraphs as though set forth in full in this cause of action.

113.   The Deed of Trust defines 'Lender As; Indymac ,However Deutsche Bank acted as a Trustee for Indymac certificates 2007 series while did not have any legal standing and authority to do so.

25

114.   Plaintiff pleads this cause of action in alternative to setting aside the trustee sale, in case the court dose not voids the sale.

115.   Defendants in a concerted effort conducted an improper foreclosure sale and wrongfully acted in exercising dominion and control over the possessory rights of the Plaintiff on the proceeding of the sale; 709000.00.

116.   As a direct result of this wrongful conduct by Defendants Boghos has been deprived of these funds wrongfully.

117.   Plaintiff refers to paragraph 1 through 58, inclusive, and incorporates those paragraphs as though set forth in full in this cause of action.

118.   Defendant by conducting improper foreclosure wrongfully acted in exercising dominion and control over the possessory right of the Plaintiff. Defendant has brought an unlawful detainer action against the Plaintiff's possessory rights. As a direct result of this wrongful conduct by Defendant Boghos lost his ability to collect rent.

119.   By statute, assignment of the mortgage carries with it the assignment of the debt. . . . Indeed, in the event that a mortgage loan somehow separates interests of the note and the deed of trust, with the deed of trust lying with some independent entity, the mortgage may become unenforceable. *The practical effect of splitting the deed of trust from the promissory note is to make it impossible for the holder of the note to foreclose,* unless the holder of the deed of trust is the agent of the holder of the note. Without the agency relationship, the person holding only the note lacks the power to foreclose in the event of default. The person holding only the deed of trust will never experience default because only the holder of the note is entitled to payment of the underlying obligation.

120.    Defendant as straw man lacks standing to foreclose, but so does original lender, although it was a signatory to the deal. The lender lacks standing because title had to pass to the secured parties for the arrangement to legally qualify as a "security." The lender has been paid in full and has no further legal interest in the claim. Only the securities holders have skin in the game; but they have no standing to foreclose, because they were not signatories to the original agreement. They cannot satisfy the basic requirement of contract law that a plaintiff suing on a written contract must produce a signed contract proving he is entitled to relief.

## FIFTEENTH CAUSE OF ACTION FOR VIOLATION OF STATUTE FIN C § 4973
(Against INDYMAC , ONE WEST BANK and Deutsche Bank National Trust Company )

121.    Plaintiff refers to paragraph 1 through 120, inclusive, and incorporates those paragraphs as though set forth in full in this cause of action.

122.    The loan broker whose name is not known at this time but was an employee of Indymac and its successor One West Bank originate this loan to BABDJANIAN without reasonably considering his ability to repay specifically the loan being an interest only loan with Plaintiff did relied on the agents and trusted him with doing the loan proper total to his ability to repay. The following alleged default in July and foreclosure sale in August 25/ 2009  less than a year and half after the refinancing  shows that the broker was reckless disregard  for repayment ability  and intentionally mislead the Plaintiff.

## SIXTEENTH CAUSE OF ACTION FOR INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATION
(Against INDYMAC, ONE WEST BANK and Deutsche Bank National Trust Company )

123.    Plaintiff refers to paragraph 1 through 122, inclusive, and incorporates those paragraphs as though set forth in full in this cause of action.

27

COMPLAINT TO SET ASIDE TRUSTEE'S SALE

124.   Defendants knew there is a contractual relationship in existence between Boghos as one joint tenant and the lender .Defendant clearly knew entering into an agreement with one of the joint tenants "Sara" will significantly interfere with the rights of the other party meaning Boghos's rights. As a result of this interference Boghos lost his property.

125.   Therefore there are sufficient factual and legal ground for this cause of action to exist.

### SEVENTEENTH CAUSE OF ACTION FOR ACCOUNTING
(Against IndyMac, ONE WEST BANK and Deutsche Bank National Trust Company)

126.   Plaintiff refers to paragraph 1 through 125, inclusive, and incorporates those paragraphs as though set forth in full in this cause of action.

127.   The amount of money still owed to defendant INDY MAC is unknown to plaintiff and cannot be determined without an accounting.

WHEREFORE, Plaintiff demands judgment as follows:

1.  That the Court issue a declaration that the sale of the trust property is null and void and of no force or effect, and (b) an order setting aside the trustee sale of the real property.

2.  That the Court issue an order that defendant DEUTSCHE BANK NATIONAL TRUST COMPANY  deliver the trustee's deed to the Court, and cancel the trustee's deed.

3.  That the Court order judgment quieting title in plaintiff Sara Babadjanian and Boghos Baadjanian  as owner of the real property described in paragraph 1, declaring that defendant DEUTSCHE BANK  has no right, title, estate, lien, or interest in the property adverse to plaintiff Sara Babadjanian and Boghos Baadjanian and ordering that plaintiff be restored to possession of the real property commonly known as 11621 Burbank Blvd

4.  That the Court render between plaintiff, Sara Babadjanian and Boghos Baadjanian and defendant DEUTSCHE BANK an accounting determining the amount, if any, actually owed to defendant by plaintiff.

28

5. That the Court award damages for the unlawful detention of the premises at the rate of 6000.00 per month from 8/25/2010, until delivery of possession to plaintiff.

6. That plaintiff recover all attorney fees and costs in this action

7. For declaratory relief from invalid trustee sale;

8. For restitution and possession of the Property;

9. For reinstatement of loan;

10. For reasonable attorney's fees and costs incurred herein;

11. For such other and further relief s the court may deem just and proper.

12. That defendant be ordered to cancel the Trustee deed upon sale  and deliver it to plaintiff or deliver the  cancellation order  to the clerk of this Court for cancellation;

13. That if defendant fails to obey the orders of the Court under Prayer 2 or Prayer 3, that the Court award plaintiff damages in the sum of $ 300.00 per day, plus interest at the legal rate from the date judgment is entered

14. For damages in the sum of $ 5000.00 a month for the use of the property, plus interest at the legal rate from the date defendant took possession of the property;

15. For exemplary damages in the sum of to be determined at the time of trial .

16. For other relief that the Court considers proper.


Respectfully submitted
Law Offices of M. Azhar Asadi
Attorney for Plaintiffs


Date:                                         By: _____

                                                      M. Azhar Asadi, Esq.

29

COMPLAINT TO SET ASIDE TRUSTEE'S SALE

# EXHIBIT-A

NEW CENTURY TITLE (GLENDAI

58770975 - WN

Z

22

Recording Requested By:

INDYMAC BANK, F.S.B.,
MANAGEMENT

*[Company Name]*

05/17/07

||||||||||||||||||||||||||||||

**20071203603**

And When Recorded Mail To:

INDYMAC BANK, F.S.B.,
MANAGEMENT

*[Company Name]*

*[Name of Natural Person]*

BLDG B, 901 E 104TH ST, SUITE 400/500

*[Street Address]*

KANSAS CITY, MO 64131

*[City, State Zip Code]*

2238. 31- 14

*[Space Above This Line For Recording Data]*

# DEED OF TRUST

MIN:  100055401264102676

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A)     "Security Instrument" means this document, which is dated                May 10, 2007
together with all Riders to this document.

(B)     "Borrower" is  BOGHOS BABADJANIAN AND SARA BABADJANIAN HUSBAND AND WIFE AS
JOINT TENANTS

Borrower is the trustor under this Security Instrument

(C)     "Lender" is   INDYMAC BANK, F.S.B., A FEDERALLY CHARTERED SAVINGS BANK

Lender is a                Federal Savings Bank                        organized and existing under the laws of
United States of America                        Lender's address is    155 NORTH LAKE
AVENUE, PASADENA, CA 91101

(D)     "Trustee" is   FIRST AMERICAN TITLE INSURANCE CO.

(E)     "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns.  MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P O  Box 2026, Flint, MI  48501-2026, tel (888) 679-MERS

Loan No: 126410267

California Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                        MERS Modified Form 3005 01/01
—THE COMPLIANCE SOURCE, INC—                                        Page 1 of 13                                        1400ICA  02/08
www.compliancesource.com                                                                                        © 2008, The Compliance Source, Inc

|||||||||||||||||||||||||

3

(F)   "Note" means the promissory note signed by Borrower and dated      May 10, 2007          . The Note states that Borrower owes Lender      seven hundred fifty thousand and NO/100ths
Dollars (U.S. $   750,000.00          )
plus interest   Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than      June   1, 2037          .

(G)   "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H)   "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I)   "Riders" means all Riders to this Security Instrument that are executed by Borrower   The following Riders are to be executed by Borrower *[check box as applicable]*

| | | |
|---|---|---|
| [x] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] Biweekly Payment Rider |
| [x] 1-4 Family Rider | [ ] Revocable Trust Rider | |
| [ ] Other(s) *[specify]* | | |

(J)   "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K)   "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L)   "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account   Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M)   "Escrow Items" means those items that are described in Section 3.

(N)   "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for   (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O)   "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan

(P)   "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument

(Q)   "RESPA" means the Real Estate Settlement Procedures Act (12 U S C  §2601 et seq ) and its implementing regulation, Regulation X (24 C F R  Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter.   As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA

(R)   "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument

Loan No: 126410267

California Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                                     MERS Modified Form 3005 01/01
—THE COMPLIANCE SOURCE, INC.—                                              Page 2 of 13                                              1400CA  08/00
www.compliancesource.com                                                                                                      © 2000, The Compliance Source, Inc.

## TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender. (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note, and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the                    County                of   LOS ANGELES

*[Type of Recording Jurisdiction]*          *[Name of Recording Jurisdiction]*

SEE EXHIBIT A ATTACHED HERETO AND MADE A PART HEREOF

Assessor's Identification Number    2338031014

which currently has the address of                         11621  BURBANK BLVD

*[Street]*

LOS ANGELES                   , California         91601                      ("Property Address")
*[City]*                                      *[Zip Code]*

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property, and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1.    Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender  (a) cash, (b) money order, (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity, or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any

Loan No: 126410267

California Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                              MERS Modified Form 3005 01/01
—THE COMPLIANCE SOURCE, INC.—                                          Page 3 of 13                              14301CA  08/00
www.compliancesource.com                                                                                       © 2000, The Compliance Source, Inc.

5

payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2.   **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3.   **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

Loan No:  126410267

California Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    MERS Modified Form 3005 01/01
—THE COMPLIANCE SOURCE, INC.—                                   Page 4 of 13                                      14MCA 08/00
www.compliancesource.com                                                                          © 2000, The Compliance Source, Inc.

*14*

State of *CA*                     §
                                  §
County of *Los Angeles*           §
                                  §
On *5-10-07* , before me, *Maria V. Khasha Ryan, Notary Public.*
                                              *(name and title of officer)*
personally appeared
                    SARA BABADJANIAN and BOGHOS BABADJANIAN

~~personally known to me (or proved~~ to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument in person(s), or the entity upon behalf of which the
person(s) acted, executed the instrument.
WITNESS my hand and official seal

Signature _____ (Seal)

MARIA V. KHASHARIAN
Commission # 1639224
Notary Public - California
Los Angeles County
My Comm. Expires Jan 17, 2010

## REQUEST FOR FULL RECONVEYANCE

TO TRUSTEE
        The undersigned is the holder of the note or notes secured by this Deed of Trust, which was recorded in the office of
                                  County, State of California, in book        , page        of official records.
the Recorder of
Said note or notes, together with all other indebtedness secured by this Deed of Trust, have been paid in full. You are hereby
directed to cancel said note or notes and this Deed of Trust, which are delivered hereby, and to reconvey, without warranty,
all the estate now held by you under this Deed of Trust to the person or persons legally entitled thereto.

Date _____

_____
        (Trustee)

Loan No: 126410267                                          MERS Modified Form 3005 01/01
California Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          1430ICA 08/00
— THE COMPLIANCE SOURCE, INC.—                    Page 13 of 13              © 2000, The Compliance Source, Inc.
www.compliancesource.com

15

# 1-4 FAMILY RIDER
## (Assignment of Rents)

THIS 1-4 FAMILY RIDER is made this   10th   day of                 May,   2007        , and
is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed
(the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's
Note to   INDYMAC BANK, F.S.B., A FEDERALLY CHARTERED SAVINGS BANK
                                                                         (the "Lender")
of the same date and covering the Property described in the Security Instrument and located at:

11621 BURBANK BLVD, LOS ANGELES, CA 91601

*[Property Address]*

1-4 FAMILY COVENANTS.  In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

**A.   ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.**  In addition to
the Property described in Security Instrument, the following items now or hereafter attached to the Property to the
extent they are fixtures are added to the Property description, and shall also constitute the Property covered by the
Security Instrument: building materials, appliances and goods of every nature whatsoever now or hereafter located
in, on, or used, or intended to be used in connection with the Property, including, but not limited to, those for the
purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light, fire prevention and
extinguishing apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets,
sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors,
screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings,
all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Property
covered by the Security Instrument  All of the foregoing together with the Property described in the Security
Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred to in this 1-4 Family
Rider and the Security Instrument as the "Property."

**B.   USE OF PROPERTY; COMPLIANCE WITH LAW.**  Borrower shall not seek, agree to or make
a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change.
Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body
applicable to the Property

**C.   SUBORDINATE LIENS.**  Except as permitted by federal law, Borrower shall not allow any lien
inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission

**D.   RENT LOSS INSURANCE.**  Borrower shall maintain insurance against rent loss in addition to the
other hazards for which insurance is required by Section 5

**E.   "BORROWER'S RIGHT TO REINSTATE" DELETED.**  Section 19 is deleted

Loan No: 126410267                              MIN:  100055401264102676

Multistate 1-4 Family Rider—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT              Form 3170 01/01
—THE COMPLIANCE SOURCE, INC.—                   Page 1 of 3                         14543MU 08/00 Rev 11/04
www.compliancesource.com                                                           ©2004, The Compliance Source, Inc

*16*

F.  BORROWER'S OCCUPANCY.  Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted

G.  ASSIGNMENT OF LEASES.  Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property.  Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion.  As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

H.  ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION. Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable.  Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents.  However, Borrower shall receive the Rents until (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent  This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only

If Lender gives notices of default to Borrower, (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant, (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorneys' fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower.  However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs.  Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender  This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

Loan No: 126410267

Multistate 1-4 Family Rider—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3170 01/01
—THE COMPLIANCE SOURCE, INC.—                          Page 2 of 3                        14543MU 01/00 Rev. 11/04
www.compliancesource.com                                                                 ©200X, The Compliance Source, Inc

*17*

I.   CROSS-DEFAULT PROVISION.  Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this 1-4 Family Rider.

_____ (Seal)
SARA BABADJANIAN                 -Borrower

_____ (Seal)
BOGHOS BABADJANIAN               -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

*[Sign Original Only]*

Loan No:  126410267

Multistate 1-4 Family Rider—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3170 01/01
—THE COMPLIANCE SOURCE, INC.—              Page 3 of 3                    1434MU 02/01 Rev 11/04
www.compliancesource.com                                            ©2004, The Compliance Source, Inc.

*18*

# FIXED/ADJUSTABLE RATE RIDER
## INTEREST ONLY PERIOD
### (1-Year LIBOR Index - Rate Caps)
(Assumable after Initial Period)
(10 Year Interest Only Period)

Loan #    126410267                                              MIN:    100055401264102676

THIS ADJUSTABLE RATE RIDER is made this 10th   day of   May,   2007
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed
of Trust, or Security Deed (the "Security Instrument") of the same date given by the
undersigned (the "Borrower") to secure the Borrower's Adjustable Rate Note (the "Note") to
INDYMAC BANK, F.S.B., A FEDERALLY CHARTERED SAVINGS BANK

(the "Lender") of the same date and covering the property described in the Security
Instrument and located at:

11621 BURBANK BLVD, LOS ANGELES, CA 91601

[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE
INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE
AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE
TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the
Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. INTEREST RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for an initial interest rate of              6.625       %. The Note
provides for changes in the interest rate and the monthly payments as follows:

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**
(A) Change Dates
The interest rate I will pay may change on the first day of      June,   2012
and may change on that day every 12th month thereafter. Each date on which my interest
rate could change is called a "Change Date."

IndyMac Bank
Fixed/Adjustable Rate Rider - WSJ 1 Yr. Libor - Interest Only Period -
Multistate

*19*

**(B) The Index**
   Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the one-year London Interbank Offered Rate ("LIBOR") which is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market, as published in The Wall Street Journal. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."
   If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**
   Before each Change Date, the Note Holder will calculate my new interest rate by adding two and 750/1000ths                                          percentage point(s) (    2.750     %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.
   The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**
   The interest rate I am required to pay at the first Change Date will not be greater than      11.625   % or less than      2.750      %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than two and NO/1000ths                                          percentage point(s) (    2.000     %) from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than             11.625 %.

**(E) Effective Date of Changes**
   My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**
   The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.



Loan No: 126410267
8480831 (0506)                                      Page 2 of 5

Form 5601
6/05

20

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

   1.   UNTIL BORROWER'S INITIAL INTEREST RATE CHANGES UNDER THE TERMS STATED IN SECTION A ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT SHALL BE IN EFFECT AS FOLLOWS:

   Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

   If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

   If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

   2.   AFTER BORROWER'S INITIAL INTEREST RATE CHANGES UNDER THE TERMS STATED IN SECTION A ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT DESCRIBED IN SECTION B1 ABOVE SHALL THEN CEASE TO BE IN EFFECT, AND THE PROVISIONS OF UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT SHALL BE AMENDED TO READ AS FOLLOWS:

   Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

Loan No: 126410267                                                                    Form 5601
B480831 (0506)                        Page 3 of 5                                        6/05

21

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Loan No: 126410267
8480831 (0506)

Page 4 of 5

Form 5601
6/05

22

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)
SARA BABADJANIAN                      -Borrower

_____ (Seal)
BOGHOS BABADJANIAN                    -Borrower

_____ (Seal)
                                     -Borrower

_____ (Seal)
                                     -Borrower

_____ (Seal)
                                     -Borrower

_____ (Seal)
                                     -Borrower

_____ (Seal)
                                     -Borrower

_____ (Seal)
                                     -Borrower

Loan No: 126410267                              Form 5601
8480831 (0506)          Page 5 of 5                6/05

23

Order No. 537097:

Exhibit "A"

Lot 192 of Tract 7637, in the City of Los Angeles, County of Los Angeles, State of California as per map recorded in Book 80, Pages 24 and 25 of Maps, in the office of the County Recorder of said County.

Except the North 42 feet measured along the Easterly and Westerly lines of Lot 192.

13

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it

Witnesses

_____   (Seal)
SARA  BABADJANIAN                          -Borrower
                                           [Printed Name]

_____   (Seal)
BOGHOS  BABADJANIAN                         -Borrower
                                           [Printed Name]

_____   (Seal)
                                           -Borrower
                                           [Printed Name]

_____   (Seal)
                                           -Borrower
                                           [Printed Name]

_____ [Acknowledgment on Following Page] _____

Loan No:  126410267

California Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT        MERS Modified Form 3005 01/01
—THE COMPLIANCE SOURCE, INC.—                  Page 12 of 13                             14301CA  80100
www.compliancesource.com                                                                © 2000, The Compliance Source, Inc

12

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option, may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. **Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. **Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

Loan No: 126410267

California Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
—The Compliance Source, Inc.—
www.compliancesource.com

Page 11 of 13

MERS Modified Form 3005 01/01
14301CA 08/00
© 2000, The Compliance Source, Inc.

obligation to do so.  It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument.  These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease.  If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10.  Mortgage Insurance.   If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect.  If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender.  If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect.  Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance.  Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve.  Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance.  If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law.  Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed.  Borrower is not a party to the Mortgage Insurance

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses.  These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements.  These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums)

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses.  If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance."  Further

(a)  Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan.  Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b)  Any such agreements will not affect the rights Borrower has – if any – with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law.  These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11.  Assignment of Miscellaneous Proceeds; Forfeiture.  All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened.  During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly.  Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed.  Unless an agreement is made in writing or Applicable Law requires interest to be paid on such

Loan No:  126410267

7

Miscellaneous Proceeds. Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

Loan No: 126410267

California Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT       MERS Modified Form 3005 01/01
—THE COMPLIANCE SOURCE, INC.—                              Page 8 of 13                        14301CA  02/00
www.compliancesource.com                                                                    © 2000, The Compliance Source, Inc.

7

whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened   During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly   Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed   Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds   Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower   If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower   Such insurance proceeds shall be applied in the order provided for in Section 2

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters   If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim   The 30-day period will begin when the notice is given   In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property   Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due

6.   **Occupancy.**   Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.   **Preservation, Maintenance and Protection of the Property; Inspections.**   Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property   Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition   Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage   If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes   Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed   If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property   If it has reasonable cause, Lender may inspect the interior of the improvements on the Property   Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause

8.   **Borrower's Loan Application.**   Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan   Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence

9.   **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.**   If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property.   Lender's actions can include, but are not limited to   (a) paying any sums secured by a lien which has priority over this Security Instrument, (b) appearing in court, and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding.   Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off   Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or

Loan No:  126410267

California Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                MERS Modified Form 3005 01/01
—The Compliance Source, Inc.—                                        Page 6 of 13                                        1489TCA  08/00
www.compliancesource.com                                                                                © 2000, The Compliance Source, Inc

Security Instrument and the Note as if no acceleration had occurred. (b) cures any default of any other covenants or agreements, (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged   Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender   (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer   Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred   However, this right to reinstate shall not apply in the case of acceleration under Section 18

20.  Sale of Note; Change of Loan Servicer; Notice of Grievance.  The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower   A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law   There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note.   If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing.  If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action   If Applicable Law provides a time period, which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph   The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21.  Hazardous Substances.  As used in this Section 21.  (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances  gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials, (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection, (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law, and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property   Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property.   The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property   If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law   Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS.  Borrower and Lender further covenant and agree as follows:

Loan  No:  126410267

California Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                     MERS Modified Form 3005  01/01
—THE COMPLIANCE SOURCE, INC.—                                    Page 10 of 13                          14301CA  08/00
www.compliancesource.com                                                                       © 2002, The Compliance Source Inc

*16*

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower  (a) pays Lender all sums which then would be due under this

Loan No: 126410267

California Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    MERS Modified Form 3005 01/01
—THE COMPLIANCE SOURCE, INC.—                                     Page 9 of 13                                          14011CA  02/00
www.compliancesource.com                                                                                      © 2000, The Compliance Source, Inc



CORPORATION SERVICE COMPANY·

# Notice of Service of Process

AP1 / ALL
Transmittal Number: 7474572
Date Processed: 03/15/2010

| | |
|---|---|
| **Primary Contact:** | Scott Moe<br>OneWest Bank, F.S.B.<br>888 East Walnut Street<br>HQ-03-01<br>Pasadena, CA 91101 |
| **Copy of transmittal only provided to:** | Maria Curiel<br>Lorna Lualhati |

| | |
|---|---|
| **Entity:** | IndyMac Bank, F.S.B.<br>Entity ID Number  2072963 |
| **Entity Served:** | Deutsche Bank National Trust Company, as Trustee of the IndyMac INDX<br>Mortgage Trust 2007-AR17 |
| **Title of Action:** | Sara Babadjanian vs. Deutsche Bank National Trust Company, as Trustee of the<br>IndyMac INDX Mortgage Trust 2007-AR17 |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Property |
| **Court:** | Los Angeles County Superior Court, California |
| **Case Number:** | EC 052417 |
| **Jurisdiction Served:** | California |
| **Date Served on CSC:** | 03/12/2010 |
| **Answer or Appearance Due:** | 30 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |
| **Sender Information:** | M. Azhar Asadi<br>310-623-1688 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**
*CSC is SAS70 Type II certified for its Litigation Management System.*
2711 Centerville Road   Wilmington, DE 19808   (888) 690-2882   |   sop@cscinfo.com

Page  56

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

*see attached Form SUM 200(A)

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

Sara Babadjanian, an individual; Boghos Babadjanian, an individual

*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*

ORIGINAL FILED
MAR -5 2010
LOS ANGELES
SUPERIOR COURT

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services. (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* Burbank Courthouse

North Central District Burbank Courthouse 300 East Olive Ave.
Burbank, CA 91502

CASE NUMBER:
*(Número del Caso):*

EC 052417

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

M. Azhar Asadi 9935 S. Santa Monica Blvd. Beverly Hills CA 90212

| DATE: | MAR 05 2010 | SARA CLARKE | Clerk, by | N LE | , Deputy |
|---|---|---|---|---|---|
| *(Fecha)* | | | *(Secretario)* | | *(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons. (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☑ on behalf of *(specify):* Deutsche Bank National Trust Company a Tru
it the Indymac Indx Mortgage Trust 2007-F1

   under: ☑ CCP 416.10 (corporation)   ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)   ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):* a Corporation
4. ☑ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 (Rev. July 1, 2009)

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

American LegalNet, Inc.
www.FormsWorkflow.com

SUM-200(A)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Babadjanian v. Deutsche Bank National Trust Company et.al. | |

## INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** *(Check only one box. Use a separate page for each type of party.):*

☐ Plaintiff   ☑ Defendant   ☐ Cross-Complainant   ☐ Cross-Defendant

Deutsche Bank National Trust Company ,as Trustee of the IndyMac INDX Mortgage Trust 2007-AR17, a corporation; QUALITY LOAN SERVICE CORPORATION, a corporation; IndyMac Mortgage Services a division of One West Bank ,FSB; a corporation  and DOES 1 through 50, inclusive,

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**
Attachment to Summons

American LegalNet, Inc.
www.FormsWorkflow.com

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Dolly Gee and the assigned discovery Magistrate Judge is Ralph Zarefsky.

The case number on all documents filed with the Court should read as follows:

## CV10- 2580 DMG (RZx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

==================================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] **Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | [ ] **Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | [ ] **Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |
|---|---|---|

Failure to file at the proper location will result in your documents being returned to you.

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**

CIVIL COVER SHEET

| | |
|---|---|
| **I (a) PLAINTIFFS**   (Check box if you are representing yourself ☐ )<br><br>Sara Babadjanian, an individual; Boghos Babadjanian, an individual | **DEFENDANTS**<br><br>Deutsche Bank National Trust Company and Indymac Mortgage Services |
| **(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)<br><br>M. Azhar Asadi, Esq.<br>LAW OFFICES OF M. AZHAR ASADI<br>9935 S. Santa Monica Blvd.<br>Beverly Hills, CA 90212<br>(310) 623-1676 | Attorneys (If Known)<br><br>Stephen C. Chuck, Esq. (SBN 119612)<br>Tiffany M. Birkett, Esq. (SBN 222390)<br>FOLEY & MANSFIELD, PLLP<br>300 S. Grand Ave., Suite 2800<br>Los Angeles, CA 90071<br>(213) 283-2100 |

**II.   BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff     ☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant     ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III.   CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV.   ORIGIN** (Place an X in one box only.)

☐ 1 Original Proceeding     ☒ 2 Removed from State Court     ☐ 3 Remanded from Appellate Court     ☐ 4 Reinstated or Reopened     ☐ 5 Transferred from another district (specify):     ☐ 6 Multi-District Litigation     ☐ 7 Appeal to District Judge from Magistrate Judge

**V.   REQUESTED IN COMPLAINT:   JURY DEMAND:**     ☐ Yes     ☒ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:**     ☐ Yes  ☒ No          ☒ **MONEY DEMANDED IN COMPLAINT: $** to be determined

**VI.   CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

FDCPA 15 U.S.C §1692 et seq.

**VII.   NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | FORFEITURE/ PENALTY | PROPERTY RIGHTS |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | | SOCIAL SECURITY |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | IMMIGRATION | | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | REAL PROPERTY | ☐ 462 Naturalization Application | ☐ 446 American with Disabilities - Other | ☐ 660 Occupational Safety/Health | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 463 Habeas Corpus-Alien Detainee | ☐ 440 Other Civil Rights | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☒ 220 Foreclosure | ☐ 465 Other Immigration Actions | | | FEDERAL TAX SUITS |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 240 Torts to Land | | | | ☐ 871 IRS - Third Party 26 USC 7609 |
| | ☐ 245 Tort Product Liability | | | | |
| | ☐ 290 All Other Real Property | | | | |

CV10 2580

**FOR OFFICE USE ONLY:**     Case Number: _____

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

CV-71 (05/08)                              CIVIL COVER SHEET                              Page 1 of 2
                                                                                          CCD-JS44

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL COVER SHEET**

**VIII(a).  IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? [X] No  [ ] Yes

If yes, list case number(s): _____

**VIII(b).  RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? [X] No  [ ] Yes

If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)   [ ] A. Arise from the same or closely related transactions, happenings, or events; or

[ ] B. Call for determination of the same or substantially related or similar questions of law and fact; or

[ ] C. For other reasons would entail substantial duplication of labor if heard by different judges; or

[ ] D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX.  VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.

[ ] Check here if the government, its agencies or employees is a named plaintiff.  If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.

[ ] Check here if the government, its agencies or employees is a named defendant.  If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.

Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties

Note: In land condemnation cases, use the location of the tract of land involved

**X.  SIGNATURE OF ATTORNEY (OR PRO PER):** _Tiffany M. Birkett, Esq._   Date **April 8, 2010**

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |